UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                          :

OGILVY GROUP SWEDEN, AB,

                                          :       **REPORT AND**
                         Plaintiff,               **RECOMMENDATION**
                                          :       **TO THE HONORABLE**
             -against-                            **DENISE L. COTE**[*]
                                          :

TIGER TELEMATICS, INC., and               05 Civ. 8488 (DLC)(FM)
GIZMONDO EUROPE LTD.,                     :

                         Defendants.      :

--------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge._____

I.     Introduction

             In this action brought by plaintiff Ogilvy Group Sweden, AB ("Ogilvy")

against defendants Tiger Telematics, Inc. ("Tiger") and its wholly-owned subsidiary

Gizmondo Europe Ltd. ("Gizmondo) (collectively, the "Defendants"), Ogilvy seeks to

recover the damages and court costs arising out of the Defendants' failure to pay for

advertising and marketing services that Ogilvy rendered to Gizmondo pursuant to two

service contracts executed in 2003 and 2004.  When Gizmondo proved unable to make

payment, Tiger entered into a Securities Lending Agreement ("SLA") with Ogilvy to

secure the amounts owed by Gizmondo.  Pursuant to the SLA, Tiger loaned its restricted

_____

             [*]This Report and Recommendation was prepared with the assistance of Susanne
Flanders, a student at Brooklyn Law School who is serving as a student law clerk in my
Chambers this summer.

securities to Ogilvy and undertook to secure their registration with the SEC so that Ogilvy could realize against the collateral in the event of a default. In its complaint, Ogilvy contended that the SLA was breached on the date that it was executed because the Defendants never intended to carry out its terms. Ogilvy also contended that the Defendants failed to file a registration statement for the securities with the SEC. (See Compl. ¶ 1; Pl.'s Inquest Mem. ¶ 5).

In an Opinion and Order dated March 6, 2006 ("Order"), Your Honor granted Ogilvy's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, with respect to its breach of contract claim.[1] (Order at 5). Thereafter, the case was referred to me to conduct an inquest regarding Ogilvy's damages.

By order dated March 10, 2006, I directed Ogilvy to serve papers setting forth proof of its damages, as well as proposed findings of fact and conclusions of law, by May 10, 2006. (Docket No. 21). The Defendants, in turn, were directed to submit their opposition papers by May 24, 2006. (Id.). Finally, my order directed both sides to indicate whether they wished the Court to conduct an evidentiary hearing. (Id.). After both sides timely filed their required papers, Ogilvy filed a reply memorandum on June 1, 2006. (Docket Nos. 22, 25-26). Neither side requested an evidentiary hearing. (Id.).

---

[1]Ogilvy also asserted common law fraud and securities fraud claims which the Order did not reach.

2

As set forth below, Ogilvy is entitled to recover contract damages in the amount of $4,105,723, prejudgment interest in the amount of $744,091.95 through July 20, 2006, and costs in the amount of $312.50. Additionally, Ogilvy is entitled to additional prejudgment interest for each day from July 21, 2006, through the entry of judgment calculated at the rate of $1,012.37 per day.

II.    Standard of Review

The need for an inquest arises most frequently in the context of a defendant's default. See generally, Fed. R. Civ. P. 55(b). In such circumstances, when the claim is for a sum certain, the Clerk of the Court may enter judgment. Fed. R. Civ. P. 55(b)(1). If it is necessary to determine the amount of the damages, the Court may hold a hearing or "order such references as it deems necessary and proper." Fed. R. Civ. P. 55(b)(2).

In this case, the amount sought is not a sum certain. Accordingly, the Court must weigh the evidence to determine the damages to be awarded. See S.E.C. v. Mgmt. Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975) ("Unless the amount of damages are [sic] absolutely certain, the court is required to make an independent determination of the sum to be awarded even where there has been a default."). As in the default context, however, a hearing is not necessary unless there is a factual issue to be resolved.

III.    Discussion

3

_____A.    Contract Damages____

As Your Honor previously observed, the Defendants have not disputed any of the material facts supporting Ogilvy's breach of contract claim.  (Order at 6). Accordingly, by virtue of their breach, Ogilvy is entitled to be "put in the same economic position [it] would have been in had the defendants fulfilled the contract."  Id. (quoting Lucent v. IBM Corp., 310 F.3d 243, 262 (2d Cir. 2002)).  Under New York law, in the event of a default in payment, a seller may recover the contract price of its goods or services upon a showing that they were ordered, received, and accepted by a purchaser who did not subsequently reject them within a reasonable period of time.  See Nuera Commc'ns Inc. v. Telron Commc'ns USA, Inc., No. 00 Civ. 9167 (RMB) (FM), 2002 WL 31778796, at *2 (S.D.N.Y. Nov. 15, 2002); Shokai Far East Ltd. v. Energy Conservation Sys., Inc., 628 F. Supp. 1462, 1466 (S.D.N.Y. 1986); Mount Vernon Mills, Inc. v. Murphy Textile Mills, 148 A.D.2d 389 (1st Dep't 1989).   A seller also may recover contract damages on an "account stated" theory when a purchaser agrees to the correctness of the seller's accounting of the amounts due, either expressly or impliedly through its acquiescence and failure to object.  See Rodkinson v. Haecker, 248 N.Y. 480, 485 (1928); Chisolm-Ryder Co., Inc. v. Sommer & Sommer, 70 A.D.2d 429, 431 (4th Dep't 1979).

The undisputed evidence in this case shows that Ogilvy sent Gizmondo 62 invoices for services rendered pursuant to the service contracts between November 21,

4

2003, and March 30, 2005.  (Guest Decl. ¶¶ 3-4 & Ex. A).  Those invoices, the

authenticity of which has not been challenged, total €3,999,631.  (see id. at 2 n.1 & Ex.

A).  In its submission to the Court, Ogilvy has proposed converting this sum into dollars

using the exchange rate (approximately $1.2607) in effect on May 1, 2006, (See id. at 2

n.1), a date which appears to have no significance other than that it is the start of the

month when Ogilvy's inquest papers were due.  In an effort to approximate Ogilvy's

damages more closely, I have instead used the average ($1.2286) of the exchange rates in

effect on the dates of the first and last invoices (respectively, $1.1912, and $1.2943) and

the date Your Honor's Order was issued ($1.2002).[2]  Using this blended exchange rate, I

find that Ogilvy provided services in the amount of U.S. $4,913,946 pursuant to the

service agreements.

        Against this sum, Gizmondo made only three payments – two in February

and another in December 2004.  (Guest Decl. ¶ 7 & Ex. B).  To calculate the dollar value

of these payments, which were made in British pounds, Ogilvy used the exchange rates

which were in effect at the time they were made.  (Id. at 3 n.2).  These exchange rates are

not challenged by the Defendants.  Accordingly, utilizing these rates, I find that

Gizmondo's payments, in total, were the equivalent of U.S. $808,223.

        The total principal amount currently outstanding under the agreements

---

[2] Each of these historic rates was obtained from a website containing an "Interactive
Currency Table (See http://www.xe.com/ict) (last visited July 17, 2006).

between Ogilvy and Gizmondo is therefore U.S. $4,105,723 ($4,913,946 - $808,223).

B.     Prejudgment Interest

Ogilvy is also entitled to recover interest.  See Oy Saimaa Lines Logistics Ltd. v. Mozaica-New York, Inc. 193 F.R.D. 87, 90 (E.D.N.Y. Apr. 19, 2000) ("Under New York law, prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract").  Pursuant to Sections 5001 and 5002 of the New York Civil Practice and Rules ("CPLR"), a party that prevails in a breach of contract action is entitled to prejudgment interest from the date that the breach occurred until the date of final judgment.  CPLR Section 5004 provides that such "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute."  On the other hand, if the contract clearly states a different interest rate, the contractual rate, rather than the statutory rate, controls.  See Astoria Fed. Sav. and Loan Ass'n v. Rambalakos, 49 A.D.2d 715, 716 (2d Dep't 1975) (contract rate, rather than statutory rate, applies after maturity and before judgment); Williamson & Co. v. Colby Engraving & Rubber Plate Corp., 413 N.Y.S.2d 580, 581-82 (Sup. Ct. Queens County 1979) (prejudgment interest following defendant's default is to be calculated at contract rate);

Ogilvy's invoices state that "payment made after [the] due date will be charged penalty interest at 2% per month."  (Guest Decl. Ex. A).  However, an interest rate set forth on an invoice does not constitute a clearly-stated contractual rate which would justify modification of the statutory rate.  See Haun Welding Supply, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 222 A.D.2d 1099, 1100 (4th Dep't 1995)

(acceptance of "materials and rental equipment accompanied by invoices that included the statement 'a finance charge of 1 ½% per month will be charged on all past due accounts'" "insufficient to establish entitlement to prejudgment interest at that rate").  Therefore, the proper prejudgment interest rate here is the statutory nine percent rate.

Ogilvy has suggested that prejudgment interest should be calculated from July 15, 2004, the date on which the SLA was executed and breached.  (See Pl.'s Inquest Mem. at 6).  This is an appropriate starting date given Your Honor's prior finding that the Defendants had admitted "that they were in breach for the entire period of the SLA." (Order at 5).

Another way to calculate prejudgment interest would be to focus on the dates of Gizmondo's payment defaults.  Here, the services that Ogilvy provided to Gizmondo were rendered both before and after July 15, 2004.  When damages are incurred over time, interest may be "computed . . . upon all of the damages from a single reasonable intermediate date."  See CPLR § 5001(b) (McKinney 1992).  Additionally, when this method is followed, the court has "wide discretion" in determining that date. See Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994); see also City of New York v. Coastal Oil New York, Inc., No. 96 Civ. 8667 (RPP), 2000 WL 648365, at *2 (S.D.N.Y. May 18, 2000) (setting reasonable intermediate date as April 15, 1993, where plaintiff had overpaid for deliveries between October 19, 1992 and October 30, 1993); Oy Saimaa Lines, 193 F.R.D. at 91 (calculating prejudgment interest from the midpoint of the

outstanding invoices); <u>Robert Half Int'l, Inc. v. Jack Valentine, Inc.</u>, 596 N.Y.S.2d 955,

958 (Civ. Ct. 1993) (same).   Ogilvy rendered 62 invoices to Gizmondo for professional

services, the due dates of which ranged from November 21, 2003 to April 29, 2005.

Because July 15, 2004 is approximately the middle of the period during which Ogilvy's

invoices were rendered, and because more services were rendered during the first half of

the contractual relationship between Ogilvy and Gizmondo, the starting date suggested by

Ogilvy would be reasonable even if the Court endeavored to run prejudgment interest from

a single intermediate date.

As stated above, Ogilvy's contract damages total $4,105,723.  Therefore,

prejudgment interest should be calculated at the rate of $1,012.37 per day ($4,105,723 x

.09 ÷ 365 = $1,012.37).  For the period from July 15, 2004, through July 20, 2006, this

interest totals $744,091.95

C.      Defendants' Contentions

In an effort to avoid the entry of judgment for the full amount owed, the

Defendants argue that Ogilvy assumed the risk of being defrauded and failed to mitigate its

damages.  For both reasons, the Defendants urge the Court to reduce Ogilvy's contract

damages by fifty percent.  (<u>See</u> Defs.' Inquest Mem. at 5-7).  The Defendants also object

to the "monstrous imprudence" of entering a multi-million dollar judgment against them

without affording them "a stitch of discovery."  (<u>Id.</u> at 8-9).  Each of these arguments

against awarding Ogilvy its contract damages is utterly meritless.

           1.    Assumption of Risk

Under New York law, a party's assumption of risk may be express or implied. Indus. Risk Insurers v. Port Auth., 387 F. Supp. 2d 299, 309 (S.D.N.Y. 2005). As the words suggest, "express assumption of risk is based on an express . . . 'agreement in advance that [the] defendant . . . would not be liable for the consequence of conduct that would otherwise be negligent,' or 'which, for whatever reason, the law deems blameworthy.'" Id. (quoting Arbegast v. Bd. of Educ. of So. New Berlin Central School District, 65 N.Y.2d 161, 168-69 (1986)). Implied assumption of risk "arises when the plaintiff 'voluntarily encounter[s] the risk of harm from defendant's conduct with full understanding of the possible harm.'" Id. (quoting Arbegast, 65 N.Y.2d at 169). Neither doctrine is applicable here.

At the outset, the SLA does not contain any language suggesting that Ogilvy sought to excuse the Defendants from their payment default. Accordingly, the doctrine of express assumption of risk does not afford them a basis to avoid any portion of their contractual liability.

Implied assumption of the risk is even less applicable. The policy of contract law "is to bind a party by what he agrees to do whether or not he intends to do what he agrees." See Metro. Life Ins. Co. v. Noble Lowndes Int'l., 84 N.Y.2d 430, 435 (citing 5A Corbin, Contracts §1123; 3 Farnsworth, Contracts §12.17a [2d ed]). Consequently, implied assumption of the risk, which is a tort defense, may not be used to reduce or avoid

the entry of judgment on a breach of contract claim.  See Eurocredit Bank v. Citibank,
N.A., No. 95 Civ. 7713 (PKL), 1996 WL 556990, at *4 (S.D.N.Y. Oct. 1, 1996) ("any
negligence that could be ascribed to [plaintiff] is not material to the contractual dispute");
In re Adler, 247 B.R. 51, 133 (Bankr. S.D.N.Y. Dec. 15, 1999) (tort concept of
assumption of risk cannot vitiate a contractual right.); see also Barry v. Liddle, No. 93 Civ.
8707 (CSH), 1997 WL 736725, at *3 (S.D.N.Y. Nov. 25, 1997) (limiting defense of
comparative negligence to negligence claims).

Therefore, the Defendants' contention that Ogilvy's damages should be reduced
based upon its assumption of risk is wholly misplaced.

### 2.    Duty to Mitigate Damages

It is a settled premise of both tort and contract law that a party has a duty to
mitigate its damages.  See, e.g., Drummond v. Morgan Stanley & Co., Inc., No. 95
Civ.2011, 1996 WL 631723, at *2 (S.D.N.Y. Oct.31, 1996) ("It is well settled that a
plaintiff who suffers injury as the result of a breach of contract is under a duty to mitigate
damages; if he or she fails to do so, any award of damages will be reduced by any
unnecessary increase in damages due to the failure of the plaintiff to avoid them.")
(quotation marks omitted); East Hampton Dewitt Corp. v. State Farm Mut. Auto. Ins. Co.,
490 F.2d 1234, 1239 (2d Cir. 1973) ("The rule is of general and widespread application
that one who has been injured either in his person or his property by the wrongful act or
default of another is under an obligatory duty to make a reasonable effort to minimize the

damages liable to result from such injury, and that if he does not make

such reasonable effort he will be debarred from recovering for those additional damages
which result from such failure.");.

Here, the SLA gave Ogilvy the right to sell the pledged securities in the
event of a payment default.  (See SLA Cl. 4.2).  The Defendants' mitigation argument is
that "on March 31, 2005, [Ogilvy] was [in] contact with Merrill Lynch regarding [a sale]
of the securities" and that "[Ogilvy] had arra[nged] with Merrill Lynch to sell their
securities as restricted securities," but failed to do so.  (Defs.' Mem. ¶¶ 5, 15).  The
Defendants further have "averred" that Ogilvy would have received "25% of the value of
the securities," i.e., $1.8 million, had the sale gone through.  (Id. ¶ 20).  Ogilvy concedes in
its complaint that it had contacted Merrill Lynch regarding a sale of the securities, (see
Compl. ¶ 29), but, apart from defense counsel's unsworn assertions in his memorandum
of law, there is no evidence that a private sale had been arranged, much less that it would
have yielded any particular sum.  The Defendants therefore have failed to meet their
burden of establishing that Ogilvy could have mitigated its damages, but failed to do so.
See Losei Realty Corp. v. New York, 254 N.Y. 41, 48 (1930) (quoting Hamilton v.
McPherson, 28 N.Y. 72, 77 (1863)) ("the burden of proving that the damages which have
been sustained . . . could have been prevented, unquestionably rests upon the party guilty
of the breach of contract."); Air Et Chaleur, S.A. v. Janesway, 757 F.2d 489, 494 (2d Cir.
1985) (quoting Katz Commc'ns. v. Evening News Assoc., 705 F.2d 20, 26 (2d Cir.
1983)) ("[T]he burden is on the appellants to prove any potential item in mitigation of

damages inasmuch as it is *pro tanto* a defense to the claim of the wronged party.")).

Finally, even if there were some evidence that Ogilvy could have minimized its losses through a private sale of the pledged securities, the Defendants do not deny that they repeatedly beseeched Ogilvy not to participate in a private sale of the unregistered securities, but, rather, to allow Tiger to "facilitate a private sale of an appropriate amount of the [s]ecurities, the proceeds of which would be applied against the substantial monies Gizmondo owed Ogilvy." (See Compl. ¶ 28; Answer ¶ 14).

It is settled law that "if the course of action chosen by [a] plaintiff was reasonable, the plaintiff can recover despite the existence of another reasonable course of action that would have avoided further damage." Barnes v. Printron, Inc., No. 93 Civ. 5085 (JFK), 1998 WL 778378, at *8 (S.D.N.Y. Nov. 5,1998) (quoting Fed. Ins. Co. v. Sabine Towing & Trans. Co., 783 F.2d 347, 350 (2d Cir.1986)). Here, it obviously ill behooves the Defendants to argue that Ogilvy should have conducted a private sale when they themselves were urging Ogilvy not to do so.

### 3.    Need for Discovery

The final argument advanced by the Defendants is that a final judgment should not be entered until they have been able to engage in discovery. Nonetheless, their papers are utterly silent as to the specifics of the discovery they allegedly need. The Defendants also declined this Court's express invitation to request an evidentiary hearing if they wished to call witnesses or cross-examine Ogilvy's affiants. (See Docket No. 21 ¶3).

The Defendants' lack of detail concerning discovery is scarcely surprising since all of the facts necessary to determine Ogilvy's damages either have been conceded or are already known to them. For example, the Defendants previously have acknowledged that they are in default under the SLA. (See Order at 4-5, 6). The Defendants also obviously have first-hand knowledge of the services that were rendered to Gizmondo and the amounts that Gizmondo was billed for those services. The Defendants also obviously know what they paid Ogilvy. Additionally, although the Defendants contend that Ogilvy should have sold the restricted securities in a private sale, the undisputed contract language clearly indicates that this was only one of the default remedies afforded to Ogilvy by the SLA. (See SLA Cl. 4.2). For these reasons, the amount that might have been realized through a private sale is not relevant to the issue of Ogilvy's entitlement to damages.

The Defendants' request that they be granted "discovery into damages" is consequently just another baseless attempt to forestall the day of reckoning.

E.     Costs

Rule 54(d) of the Federal Rules of Civil Procedure provides, insofar as relevant, that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). These allowable costs, in turn, are set forth in 28 U.S.C. § 1920. See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987); Whitfield v. Scully, 241 F.3d 264, 269 (2d

Cir. 2001).  That statute provides that:

> A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under [28 U.S.C. § 1923]; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [28 U.S.C. § 1828].

28 U.S.C. § 1920.

In its inquest papers, Ogilvy seeks to recover a total of $2,067 in costs, including the $250 filing fee, $125 in duplication costs, and $1,692 for the cost of service.

The $250 filing fee is plainly a recoverable cost.  See 28 U.S.C. § 1920(1); Local Civ. R. 54.1(c)(10).

Turning to the cost of duplication, Ogilvy seeks to recover $125 for copying the summons, complaint, and motion papers filed with the Court and served on the Defendants.  (See Pl.'s Inquest Mem. at 4).  Section 1920(4) provides that a party may recover the costs of copies "obtained for use in the case."   28 U.S.C. § 1920(4).  This unquestionably entitles a party to be reimbursed for the cost of copies used at trial.  See, e.g., Bennett Chem. Co. v. Atl. Commodities, Ltd., 24 F.R.D. 200, 205 (S.D.N.Y. 1959).  Courts differ, however, as to the propriety of taxing other copying costs.  Some courts take the view that the parties' costs of "copying their own pleadings and motions for filing with

the court, serving on opposing counsel, or transmitting to their clients" do not meet the statutory definition of taxable costs because they are "not copies of papers 'necessarily obtained for use in the case.'"  E.g., Sphere Drake Ins. PLC v. Trisko, 66 F. Supp. 2d 1088, 1093-94 (D. Minn. 1999) (quoting Emmenegger v. Bull Moose Tube Co., 33 F. Supp. 2d. 1127, 1133 (E.D. Mo. 1998)).  A party certainly should not be reimbursed for the seemingly limitless number of internal copies that modern-day law firms can generate. Nevertheless, unless a pleading is unnecessarily long, "it is reasonable to reimburse [a party] for copies provided to counsel and to the court."  Maricus W. v. Lanett City Bd. of Educ., 142 F. Supp. 2d 1327, 1330 (M.D. Ala. 2001).  This is particularly true where, as here, the case is resolved through a dispositive motion prior to trial.

In its papers, Ogilvy seeks to recover copying costs in the amount of $125 (250 pages x $.25 per page).  While the page count and per page cost seem reasonable, Ogilvy's math is wrong.  Accordingly, Ogilvy should be awarded only $62.50 for copying costs.

Finally, Ogilvy also requests $1,692 "for the time billed by [its counsel's managing clerk] in effecting service of the Summons and Complaint and Motion Papers" on the Defendants.  (Rubin Decl. ¶ 8).  Although fees and expenses related to service are not specifically identified as a taxable cost in Section 1920 or Local Rule 54.1, courts typically award them when the amounts sought are reasonable.  See Qwest Commc'ns Corp. v. N.Y. Telenetworks, Inc., No. 03 Civ. 2614 (RMB) (AJP), 2004 WL 1627178, at

-18-

*1 (S.D.N.Y. July 21, 2004) (recommending award of $236.50 to cover filing and process

service fees); CSC Holdings, Inc. v. Khrisat, No. 04 Civ. 8592 (LBS) (RLE), 2005 WL

3030838, at *6 (S.D.N.Y. Nov. 8, 2005) (awarding $35 process service fee).

Here, however, Ogilvy provides no breakdown of its alleged costs.

Moreover, the SLA expressly provides that service of process upon the Defendants in

connection with collection proceedings may be made by facsimile transmission, and that

the Defendants have "appointed Madison Stock Transfer, PO Box 145-290, Brooklyn,

NY 11229, USA, as [their] agent[s] for the service of process in New York in relation to

any matter arising out of this Securities Lending Agreement, service upon whom shall be

deemed completed whether or not forwarded to or received by [Tiger] or Gizmondo, as the

case may be." (SLA Cls. 12.3, 12.4). In light of these provisions, and Ogilvy's failure to

explain or substantiate its service costs, this aspect of Ogilvy's application should be

denied. See DCH Auto Group (USA) Inc. v. Fit You Best Auto., Inc., No. 05 Civ. 2973

(NG) (JMA), 2006 WL 279055, at *4 (E.D.N.Y. Jan. 10, 2006) (rejecting plaintiff's

request for costs related to "outside professional services" due to lack of explanation or

documentation); Rotella v. Board of Educ. of City of New York, No. 01 Civ. 0434

(NGG), 2002 WL 59106, at *1 (E.D.N.Y. Jan. 17, 2002) (reducing the amount of costs

awarded because plaintiff failed to establish the reasonableness of the charges).

Ogilvy should therefore be awarded $312.50 ($250 + $62.50) as taxable

costs.

V.     <u>Conclusion</u>

For the reasons set forth above, I recommend that judgment be entered in

favor of Ogilvy and against the Defendants in the amount of $4,850,088.45, consisting of

contract damages in the amount of $4,105,723, prejudgment interest in the amount of $744,091.95 through July 20, 2006, and costs in the amount of $312.50. Additionally, Ogilvy should be awarded prejudgment interest from July 20, 2006, through the entry of judgment calculated at the rate of $1,012.37 per day.

VI.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten (10) days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Denise L. Cote, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York, 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e). 72(b). Any requests for an extension of time for filing objections must be directed to Judge Cote. The failure to file timely objections will result in a waiver of those objections for the purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed. 2d 435 (1985); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:    New York, New York
          July 20, 2006

                                              _____
                                              / FRANK MAAS
                                              United States Magistrate Judge

-17-

Copies to:

Hon. Denise Cote
United States District Judge

Marshal Shichtman, Esq.
Marshal Shichtman & Associates, P.C.
(516) 741-5212 (fax)

Howard J. Rubin, Esq.
Scott Walker, Esq.
Shirin Keen, Esq.
Davis & Gilbert, L.L.P.
1740 Broadway
New York, NY 10019